ROGERS, Justice.
 

 This is a slander of title suit brought by the City of Shreveport against eighteen defendants. Plaintiff prays for the cancellation of certain recitals contained in the acts of sale described in the petition and for the recovery of damages from each defendant. Plaintiff also prays that the defendants be ordered either to assert or to disclaim whatever title or interest they claim in the property.
 

 James Foster and Frances Foster, two of the defendants, are absent minors.
 
 *60
 
 Mrs. W. M. Meriwether, Mrs. Louella Foster Crenshaw, Mrs. Elinor Foster Comegys, Mrs. Lucille Foster McMillan, J. Flavell Foster, and Miss Mary T. May, major defendants, are non-residents of the State. Leon I. Kahn, Mrs. Harvey S. Bogan, Mrs. Frances Rainsberger, Mrs. Amelia Foster Cook, Mertis McCutcheon Foster, Sanford J. Foster, Mrs. Natalie Heilperin Weiss, major defendants, and Lawrence L. 'May, Jr., and Alexander May, minor defendants, are residents of the Parish of Caddo. Mrs. Fannie Levy Mayer, the remaining major defendant, is a resident of the Parish of Orleans.
 

 The absent major defendants, Mrs. Meriwether, Mrs. Crenshaw, Mrs. Comegys and Mrs. McMillan, appearing through a curator ad hoc, James Foster and Frances Foster, the absent minors, appearing through a curator ad hoc, the resident minors, Lawrence L. May, Jr., and Alexander May, appearing through their father, Lawrence L. May, administering their estate, and the resident majors, Leon I. Kahn and1 Mrs. Fannie L. Mayer, appearing through their counsel, filed exceptions of vagueness and of no right or cause of action. The other defendants did not file any exceptions, but, appearing through counsel, filed their answers denying that they were claiming or had ever claimed any interest in the property and entering a complete disclaimer of title thereto.
 

 All the exceptions were overruled. The absent minor defendants, James Foster and Frances Foster, through' their curator, filed an answer in the natúre of a general denial. The defendants, Leon I. Kahn and Mrs. Fannie L. Mayer, filed answers, denying that they were claiming any interest in the property, but they embodied in their answers a reconventional demand asking for an injunction against the City of Shreveport.
 

 The defendants Mrs. W. M. Meriwether, Mrs. Louella Foster Crenshaw, Mrs. Elinor Foster Comegys, Mrs. Lucille F. McMillan, and the minors, Lawrence L. May, Jr., and Alexander May, did not answer or further appear, and a default was entered against them.
 

 On a rule to show .cause, the court below gave judgment in favor of the plaintiff and against all except four of the defendants who had filed answers disclaiming any interest in the property, quieting the plaintiff in its ownership and possession of the property and rejecting plaintiff’s demands for damages. No appeal was taken from this judgment.
 

 Subsequently the case was called for trial on its merits under the answers filed by the four defendants, Leon I. Kahn, Mrs. Fannie L. Mayer, and the minors, ’James Foster and Frances Foster, and for confirmation of the preliminary default entered against those defendants who failed to file answers. At the conclusion of the trial and after argument of counsel, the court below rendered judgment in favor of plaintiff and against Leon I. Kahn, Mrs. Fannie L. Mayer, and the minors, James Foster and Frances, Foster, recognizing plaintiff as the owner of the property in dispute and quieting it in. its possession thereof, and rejecting, the
 
 *62
 
 demands of Leon I. Kahn and Mrs. Fannie L. Mayer for an injunction. On confirmation of the default taken against the defendants who failed to file answers, the judgment was in favor of those defendants, rejecting plaintiff’s demands. From this judgment the plaintiff, City of Shreveport, appealed devolutively to this Court, and the defendants, Leon I. Kahn and Mrs. Fannie L. Mayer answered the appeal alleging that the trial judge had erred in certain particulars.
 

 Only three of the eighteen original parties litigant are before this Court complaining of the judgment appealed from. These are the plaintiff, City of Shreveport, and two of the defendants, Leon I. Kahn and Mrs. Fannie L. Mayer. A short statement of the essential facts, as disclosed by the record, will assist in understanding the nature of their complaints. They are as follows:
 

 J. M. Foster, J. C. Foster, Simon Levy, Jr., and H. L. Heilperin formerly owned, in equal shares, the N% of SWJ4 of Section 35, Township 18 North, Range 14 West, Caddo Parish, Louisiana. All these parties, except H. L. Heilperin, died prior to 1907. In that year the widow and heirs of J. M. Foster, the widow and heirs of J. C. Foster, the heirs of Simon Levy, Jr., and H. L. Heilperin sold their interests in the property to.the City of Shreveport. The total consideration of these sales, as shown by the deeds, was $15,925, which was on the basis of $200 per acre. The acts of sale from the Foster widows and heirs contain the statement that the acquisition of the City of Shreveport was for park purposes. The acts of sale from the other vendors contain the statement that such acquisition was for park purposes only. All the acts of sale contain the statement that the larger portion of the purchase price was to be paid out of the proceeds of “the sale of the City Park Bonds lately voted and soon to be issued.” In the course of time the property became what is now known as the Lakeside Park of the City of Shreveport. Shortly before this suit was instituted, oil was discovered in the vicinity of Lakeside Park which, as the result of the discovery, has become extremely valuable.
 

 In the belief that oil and gas deposits underlie the approximately 80 acres of land comprising Lakeside Park, the municipal authorities, by proper corporate action, agreed to lease the property for development to W. C. Feazel, who offered the City a bonus of $5,000, together with a royalty interest in all oil and gas produced. After an examination of the abstract of title, the attorney for Feazel informed him that it would be inadvisable to accept title to the property in its present shape. One of the defendants, Leon I. Kahn, wrote a letter to Feazel advising him that the property had been sold to the City of Shreveport to be used for park purposes only and that he and Mrs. Fannie L. Mayer, whom he was assuming to represent, expected to protect their interests. About two weeks after that letter was written the City of Shreveport instituted this suit.
 

 Plaintiff, in its petition, after alleging its ownership and possession of the prop
 
 *64
 
 erty described, shows that the property has recently become valuable by reason ■of the discovery and production of oil and gas in its vicinity; that because of this development it became possible for plaintiff to lease the property for the production of oil and gas for the benefit ■of the public and without changing its destination for park purposes; that by corporate action the plaintiff has agreed to lease the property to W. C. Feazel for the consideration stated, but that the prospective lessee, although he is prepared to accept the lease, is not willing to do so because of the restrictive condition embodied in the deeds by which plaintiff acquired the property, namely, the use of the property for park purposes only; that the defendants are slandering plaintiff’s title to the property by claiming to be the owners of an interest therein and of the mineral rights thereunder, because of the statement in the deeds that the property is to be used for park purposes only.
 

 Plaintiff further alleges that it paid full value for the property in 1907, and that it was prevented from leasing the property for oil and gas development by the actions of the defendants.
 

 Plaintiff further alleges that “the stipulation contained in said deeds as to the purpose for which said property was acquired, if intended to prevent in perpetuity the use of said property by the purchaser for any purpose except for exclusive public park purposes, is void because it is in violation of the public policy of this State in that it forever places said property out of commerce and creates an estate in said land unknown and obnoxious to the laws 'of the State,” and that “said stipulation, if not void ab initio is, under the facts of this case, void because it is in violation of the public policy of the State in that while the vendors in said acts of conveyance conveyed by warranty deed the entire property theretofore owned by them, they and their successors will be able, if said stipulation is held valid, to prevent the development of said property for minerals to the great detriment and loss of the owner, but without gain or advantage to said vendors and their successors.”
 

 The prayer of the petition reads in part as follows: “Wherefore, petitioner prays that said defendants be ordered either to disclaim any title whatever or any interest in said property, or to assert herein such rights, claims and pretensions as they may have against said property, and that after due proceedings had there be judgment herein in favor of your petitioner and against all of said defendants, decreeing the recitals in the deeds hereinabove described, insofar as they may contain a resolutory condition or inhibit the use of said property by petitioner for any purpose whatever, to be null and void and of no effect, and condemning the said defendants in solido to pay to your petitioner the sum of * *
 

 The plaintiff, City of Shreveport, complains that the judgment of the court below is erroneous in two particulars, — first, in rejecting on confirmation of default its demands against the defendants, Mrs. W.
 
 *66
 
 M. Meriwether, Mrs. Louella F. Crenshaw, Mrs. Elinor F. Comegys, Mrs. Lucille F. McMillan, and the minor children of Lawrence L. May, who failed to answer the petition, and secondly, in rejecting its demands for damages against Leon I. Kahn and Mrs. Fannie L. Mayer.
 

 Before considering these complaints, it is necessary to determine the character of plaintiff’s action. This is so because plaintiff insists that its action is not a mere slander of title suit, but is, in addition, a suit to remove a cloud from its title. This cloud, plaintiff contends, results from the words embodied in the deeds relating to the use to be made of "the property or the purpose for which the property was transferred by the vendors or acquired by the vendee.
 

 ' Plaintiff’s contention is not tenable. Plaintiff’s petition and prayer disclose that its action is a jactitation or slander of title suit purely and simply. No issue of title was tendered by the appellees, Mrs. Meriwether, Mrs. Comegys, Mrs. Crenshaw, Mrs. McMillan and the May minors. The entry of the preliminary default against them was not sufficient to raise such an issue. The entry of the default had no other effect than to form a tacit joinder of issue on the basis of a general denial. It merely served to put plaintiff on proof of the relevant facts alleged. Plaintiff could not ingraft on its action a demand to remove a cloud from its title. Bossier’s Heirs v. Hollingsworth & Jackson, 119 La. 500, 44 So. 278; Siegel v. Helis, 186 La. 506, 172 So. 768.
 

 In the absence of -answers setting up title, the only possible issues arising between plaintiff and the defendants, who failed to answer, were the possession of plaintiff and the slander by those defendants. Rudd v. Land Co., 188 La. 490, 177 So. 583; Siegel v. Helis, supra.
 

 Plaintiff proved its possession of the property described in the petition, but it utterly failed to prove that any of the defendants against whom it sought a judgment by default had ever slandered its title. Without proof of facts showing slander of title, such a suit can not be maintained. Proctor v. Richardson, 11 La. 186. The mere fact that the deeds, which the City of Shreveport voluntarily took from the ancestors of these particular defendants, contained a stipulation that the property conveyed should be used for park purposes only can not sustain an action of slander of title against the defendants. Whatever may be the legal effect of the words “for park purposes” and “for park purposes only,” contained in the deeds on which its ownership is based, the City of Shreveport has not proved that they were wrongfully incorporated in the deeds.
 

 In support of its contention that its allegations and proof, in the absence of any contrary proof, was sufficient to sustain a judgment in its favor against those defendants who failed to answer, plaintiff cites the case of’Board of Trustees of Ruston Circuit, Methodist Episcopal Church, South, v. Rudy, 192 La. 200, 187 So. 549. But the decision in that case is not authority for plaintiff’s contention.
 
 *68
 
 In that casé there was no question involving the effect -of a judgment by default against defendants who had not answered the petition. The issue there arose under the allegations not only of plaintiff’s petition but also of defendants’ answers. The suit brought originally as a slander of title or jactitation action was, by the defendants’ answers, converted into a petitory action. It was on that issue the case was tried and decided.
 

 Since plaintiff has failed to sustain its charge of slander of .title against those defendants for whom issue was joined by the entry of a preliminary default, the judgment of the lower court rejecting plaintiff’s demands as to them is clearly correct.
 

 We find no- error in that portion of the judgment appealed from rejecting plaintiff’s demand for damages against Leon I. Kahn and Mrs. Fannie L. Mayer. Two items of damages were urged in the claim by plaintiff, — one of these was for attorney’s fees in the sum of $5,000, and the other was for the loss of bonus, rentals and royalties in the sum of $8,000 per month until thirty days after final judgment. Plaintiff admits that the second item of its claim for damages can not be recovered because no proof was offered or could be offered upon the claim. As to the first item of plaintiff’s claim for damages relative to attorney’s fees, it suffices to say that attorney’s fees are not recoverable as damages in a slander of title or jactitation suit. Meraux & Nunez, Inc., v. Gaidry, 171 La. 852, 132 So. 401; Moran v. Simonin, 177 La. 457, 148 So. 677..
 

 Having disposed of the complaints of the City of Shreveport against the judgment of the court below, we shall now proceed to consider the complaints of the defendants, Leon I. Kahn and Mrs. Fannie L. Mayer, . against the judgment. These complaints are brought to this Court under the defendants’ answer to the plaintiff’s appeal.
 

 Plaintiff by argument, and not by pleading, objects to the review by this Court of that portion of the judgment of the court below which was adverse to the demands of the defendants, Mr. Kahn and Mrs. Mayer, on the ground that these defendants, not having appealed, can not have the judgment disturbed or modified,, by merely filing an answer to plaintiff’s appeal which was taken for only a limited purpose. If we are permitted to consider plaintiff’s objection in the form in which it is urged, i. e., in brief and not by pleading, we are compelled to the conclusion that the objection is without force.
 

 The right of the defendants to have the judgment of the court below reviewed by an answer to plaintiff’s appeal is expressly authorized by Articles 592 and 888 of the Code of Practice. The leading case on the question is Lange v. Baranco, 32 La.Ann. 697. In that case, at page 699, the Court said:
 

 “The plaintiff objects to the trial of the case here as regards the reconventional demand, on the ground that the defendant did not appeal from the judgment dismissing that demand.
 

 “It was unnecessary that she should do so. A judgment is the solemn adjudica
 
 *70
 
 tion of a court, established by law, made in a suit upon the relative claims of parties thereto, as disclosed by the record, and which passes on the matters so presented for determination. When it decides the issues submitted, it is an entirety, and, strictly, is indivisible; not so, however, as to compel a party who is only partly benefited to appeal from the judgment in his behalf. It may be rendered partly in favor of or against a litigant, and partly in favor of or against others. The party who appeals, whoever he be, theoretically brings up the entire judgment for revision to the appellate court; absolutely, as far as it aggrieves him, and conditionally as it affects others who are the appellees, and who can ask that the judgment, as to them, be re-examined and reformed. The Code of Practice, art. 888, recognizes undoubtedly this theory, by permitting expressly the appellee, in his answer, when seasonably filed, to ask a reversal in part and a confirmation in part, as he may choose to do.
 

 “The whole judgment is therefore before us for review.”
 

 The decision in the Lange case has been approved by this Court in a number of subsequent cases, the most recent case on the subject being Alengi v. Hartford Accident & Indemnity Company, 183 La. 847, 165 So. 8.
 

 In support of its objection to the consideration by this Court of the complaints of Leon I. Kahn and Mrs. Fannie L. Mayer against the judgment of the court below, the City of Shreveport cites the cases of Vicksburg, S. & P. R. Co. v. Traylor, 104 La. 284, 29 So,, 141; Vicksburg S. & P. Ry. Co. v. Traylor, 105 La. 748, 30 So., 117, and DeBellevue v. Couvillion, 3 La.App. 568. These cases are not in point. None of them has any bearing-on the right of the-defendants to obtain a review of the judgment of the court below by answering the appeal of plaintiff from that part of the judgment by which plaintiff is aggrieved.
 

 Leon I. Kahn and Mrs. Fannie L. Mayer, in their answer to plaintiff’s appeal, complain that the court below erred in overruling their exceptions, and that the court also erred in refusing to enforce the stipulation in the deeds by which the City of Shreveport acquired Lakeside Park and in rejecting their demand for an injunction prohibiting the City of Shreveport from using the park or any portion thereof for any other than park purposes and particularly from making a private use of the property for the production of oil or gas.
 

 We find no error in the action of the court below in overruling the exceptions of these defendants. Turning now to an examination of their complaints of the judgment on the merits, we find that after their exceptions, were overruled, they answered plaintiff’s petition, denying that they had slandered plaintiff’s title in any manner, denying that they claimed or had ever claimed any interest in the property or in the minerals underlying the property, and averring that the only right they were asserting was their natural right to see that the obligation which plaintiff contracted in their, fayor to use the property
 
 *72
 
 only for park purposes, as set forth in the deeds, should be observed. Defendants averred that drilling oil and gas wells on the property would be making a private use of the property, wholly inconsistent with the use to which it was dedicated by the vendors and vendee in the deeds by which plaintiff had acquired the property. Defendants averred that they were induced to sell the property to the City of Shreveport at the price of $200 per acre solely because of the promises of the city, as set forth in the deeds, to use the property for park purposes; that the use of the property for park purposes was not only a matter of particular interest to them, but was also a matter of general interest to the public and to all the people.of the municipality; that the property had been used for many years • as a park, a portion of it being used as a public golf course, and that the danger necessarily incident to the drilling and operation of wells producing oil and gas are such that the park will be rendered unfit for park and recreational purposes. Defendants prayed that the demands of the plaintiff should be rejected and that they should have judgment perpetually enjoining plaintiff from using any portion of Lakeside Park for any purpose other than for park purposes, and particularly prohibiting plaintiff from causing or permitting any oil or gas well to be drilled on the property.
 

 The demand of Leon I. Kahn and Mrs. Fannie L. Mayer, as contained in their answers and accompanying prayers, for the enforcement of the provisions of the deeds by which the City of Shreveport acquired the property and for an injunction prohibiting the City from using the property in any manner contrary to these provisions, is based on their claim of a particular interest, as successors to the vendors, and of a general interest, as a citizen and as taxpayers of the municipality. No question is made by the plaintiff of the defendants’ right to maintain their demand. Whatever may be their right to maintain their demand as successors of the vendors of the property, it is clear that they have the right, Mr. Kahn as a citizen and taxpayer and Mrs. Mayer as a taxpayer of the City of Shreveport, to prosecute' their demand to keep a public place open for the public use. State ex rel. Schoeffner v. Dowling, 158 La. 706, 104 So. 624; Anderson v. Thomas, 166 La. 512, 117 So. 573.
 

 It has been properly held that: “The uses to which park property may be devoted depend, to some extent, upon the manner of its acquisition, that is, whether dedicated by the donor, or purchased or condemned by the municipality. A different construction is placed upon dedications made by individuals from [that placed on] those made by the public. The former are construed strictly according to the terms of the grant, while in the latter cases a less strict construction is adopted.” Slavich v. Hamilton, 201 Cal. 299, 257 P. 60, 61.
 

 In this case the property in dispute was. not donated by the original proprietors to the City of Shreveport. The title of the property was conveyed to the City in
 
 *74
 
 fee simple for a substantial consideration, the deeds containing a recital that the property was conveyed for park purposes only.
 

 It is not' disputed that after the City of Shreveport acquired the property, it established a public park thereon, and it may be that as long as the property is so used and needed the municipality is without authority to change such use to another and entirely different use. As to that, we express no opinion and it is not necessary to decide the question here.
 

 The defendants, Mr. Kahn and Mrs. Mayer, disclaim ownership both of the surface and the mineral rights appertaining to the property in dispute. They do not assert any reversionary interest therein, nor do they contend that the deeds contain a resolutory condition. Their contention, reduced to its simplest terms, is that the proposed mineral lease of Lakeside Park will result in the diversion of the property from legitimate park purposes, and hence, is beyond the power of the municipality to grant.
 

 For its part, the City of Shreveport contends that oil and gas underlying the 80 acres of land comprising Lakeside Park may be extracted and saved for the benefit and advantage of all the inhabitants of the City without substantial interference, and then only temporarily, with the use of the land for park purposes and without changing its destination as such.
 

 In considering the questions raised by these respective contentions, the following facts, established by the evidence, are important:
 

 The City of Shreveport proposes to grant a mineral lease to W. C. Feazel, who, in turn, has agreed to pay the City a bonus of $5,000, a royalty of one-eighth and, additionally, an overriding royalty of three-sixteenths of seven-eighths of all oil and gas produced from the leased premises. Among the provisions which the lessor and lessee have agreed shall be incorporated in the lease are the following:
 

 “II. It is distinctly understood and agreed that the above described property is being used by Lessor as a park and that in the drilling of his wells and in the operation thereof, Lessee shall not interfere with the use of said property for park purposes. No more than is necessary of the surface of said property shall be used for Lessee’s operations, the parties estimating that the Christmas tree of each well will occupy a space approximately five feet square and the tank battery a space approximately forty feet square. Only one battery of tanks shall be placed on said property. All pipe lines shall be buried at least eighteen inches deep and the area occupied' by them shall be back-filled, well-tamped and resodded at the level of the surrounding land immediately upon completion of the laying of said lines. No buildings or structures shall be placed by Lessee on said premises except such as are necessary for the production of oil or gas. All pits' and other excavations when no longer required, shall be filled, tamped and leveled and the sur
 
 *76
 
 face of the ground restored to its condition prior to the drilling of the well. Not more than two wells shall be drilled to the depth of the present oil production in the field and each well shall be located in the approximate center of a forty acre tract. The ground around each well and the tanks shall be landscaped and kept in as good condition as the surrounding terrain; and the tanks shall be located in the deep wooded ravine which runs through said property and at a point approximately 450 feet north and 800 feet east of the southwest corner of the land leased. Each well and all equipment used in connection therewith and the tank battery shall be enclosed by a No. 9 gauge chain link fence, 2-inch mesh, •six feet high with three strands of barbed wire surrounding the same on one foot steel arms attached to the top of galvanized iron posts set in concrete and •extending outward from the top of said posts at an angle of thirty degrees, making a fence seven feet high over all.
 

 “The gates in said fence shall be of the same material and specifications and shall be kept locked at all times.”
 

 We do not think that the drilling and operating of two oil or gas wells under the obligations imposed and assumed by the lessee could possibly interfere with the free or customary use of Lakeside Park for park purposes. The lessee’s compliance with his obligations as defined in the above-quoted provision, which is to be incorporated in the lease, means that only a very small portion of the 80-acre tract of .land comprising Lakeside Park will be required for mineral development and most of that, only temporarily, and it also means that the ground around each well and the tanks shall be landscaped and maintained in the same condition as the surrounding terrain. And beyond this, the evidence satisfactorily shows that Lakeside Park may be safely developed for its minerals without danger to the public and without substantial interference with the use of the property for park purposes.
 

 From the foregoing it is apparent that the complaints of the defendants, Mr. Kahn and Mrs. Mayer, against the judgment rendered by the court below are not well founded.
 

 Act No. 160 of 1936 authorizes municipalities to grant mineral leases on lands owned by them. Counsel for plaintiff have referred to this act in their brief, accompanying their reference with the statement that the act is not necessary to add to the right of a municipality, and that it was passed “merely for the purpose of prescribing the manner in which the right, which the municipality had, might be exercised.” In view of the conclusion we have reached and expressed herein, we do not find it essential, for the purpose of our decision, to consider the effect of the legislative act.
 

 The defendants filed a motion in this Court to remand the case for the purpose of taking further testimony on the question of whether the drilling and operating of oil or gas wells in Lakeside Park will be dangerous to those persons using the park for recreational purposes.
 
 *78
 
 Defendants allege in their motion that since the filing of the transcript in this Court a gas well located at some point in the so-called Shreveport field blew out, with the result that two fire companies and an assistant chief of the fire department were placed on guard to prevent fires being ignited in the neighborhood. Excerpts from the Shreveport newspaper containing an account of the incident are annexed to the motion. It is shown, however, from the excerpts that the well was promptly brought under control without fire and that no damage was done to the well, the equipment, or the workmen. The circumstances relied on by defendants are entirely too remote to justify this Court in granting their motion.
 

 For the reasons assigned, the judgment appealed from is aifirmed.